IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MATTHEW K. V.,

        Plaintiff,

  v.                                              Civil Action No.
                                                     5:20-CV-1197 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____

APPEARANCES:                         OF COUNSEL:

FOR PLAINTIFF

MEGGESTO, CROSSETT &          KIMBERLY A. SLIMBAUGH, ESQ.
VALERINO, LLP
313 East Willow Street, Suite 201
Syracuse, NY 13203

FOR DEFENDANT

SOCIAL SECURITY ADMIN.          LISA SMOLLER, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

    Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on January 20, 2022, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2)	The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3)	The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:	January 25, 2022
	Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
MATTHEW K.V.,

                        Plaintiff,

vs.                                          5:20-CV-1197

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
--------------------------------------------------------x
```

*DECISION* - January 20, 2022

the HONORABLE DAVID E. PEEBLES

United States Magistrate Judge, Presiding


<u>APPEARANCES</u>  (by telephone)


For Plaintiff:    MEGGESTO, CROSSETT & VALERINO, LLP
                  313 East Willow Street
                  Syracuse, NY 13203
                    BY:  KIMBERLY A. SLIMBAUGH, ESQ.

For Defendant:    SOCIAL SECURITY ADMINISTRATION
                  J.F.K. Federal Building
                  15 Sudbury Street
                  Boston, MA 02203
                    BY:  LISA SMOLLER, ESQ.


*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

THE COURT: Let me begin by commending counsel for excellent written and oral presentations. I have enjoyed working with you on this matter.

The plaintiff has commenced this proceeding pursuant to 42, United States Code, Sections 405(g) and 1383(c)(3) to challenge a determination by the Acting Commissioner of Social Security finding that Mr. Villie was not disabled at the relevant times and, therefore, is ineligible to receive the benefits for which he applied.

The background is as follows. Plaintiff was born in April of 1993 and is currently 28 years old. He was twenty years of age at the alleged onset of disability on February 1, 2014. Plaintiff lives in Baldwinsville with his mother and stepfather, as well as a 16-year-old sister. The sister was 16 years old at the time of the hearing, that is. Plaintiff stands 5-foot 11-inches in height and weighs 250 pounds, making him clinically I think obese to some degree.

Plaintiff has a GED which was achieved in April of 2011. He was home schooled due to bullying that he experienced in whatever school setting he was previously in. He also underwent one full and one partial semester of college education.

In terms of work, plaintiff worked from July 2011 to February 2014 at Wegmans in customer service, where he had

various duties, including as a cashier, bagger and helper, as well as a bakery unloader.  There was also a reference to a two day failed work attempt in 2015.

The focus of this case is on plaintiff's mental health.  He suffers from various impairments, including depression, social anxiety disorder, agoraphobia, attention deficit and hyperactivity disorder.  He stated to Dr. Shapiro, I believe, that he was hospitalized it sounds like three times in 2010 and 2011.  There is no indication of any mental health treatment in the record prior to February 26, 2016, when he began treating with his primary care provider, Dr. Alberto Del Pilar, who addressed his physical as well as mental health situation.

Plaintiff later began treatment with Dr. Donald Pilch in October of 2017.  He testified, he stated that he sees Dr. Pilch monthly.  He also treats with licensed clinical psychologist -- or, social worker Greg, his name was Heffner and later it changed to Moore, who he has seen weekly since June of 2016.

Physically, as I alluded to, plaintiff suffers from obesity, which does not appear, nor does he claim, that it poses any limitation on his ability to perform basic work functions.

In terms of activities of daily living, plaintiff is able to dress, bathe, groom, cook, drive, clean, do

laundry, does some shopping, he can travel, plays video games, works on the computer, he mows the lawn, he socializes with friends, watches television, listens to music, goes for walks, and cares for pets, including a puppy.

Procedurally, plaintiff applied for Title II and Title XVI benefits under the Social Security Act on May 2, 2018, alleging an onset date of February 1, 2014.  In his functional report at page 118 -- might be 178, I can't read my own writing -- he claimed disability based on anxiety, depression and ADHD.

A hearing was conducted on October 31, 2019, by Administrative Law Judge John Ramos to address plaintiff's application for benefits.  ALJ Ramos issued an unfavorable decision on November 19, 2019.  That became a final determination of the Agency on August 12, 2020, when the Social Security Administration Appeals Council denied plaintiff's application for review.  This action was commenced on September 30, 2020, and is timely.

In his decision, ALJ Ramos applied the familiar five-step sequential test for determining disability.  He noted at the outset that plaintiff was last insured under the Social Security Act on December 31, 2015.

He found at step one of the analysis that plaintiff had not engaged in substantial gainful activity since February 1, 2014, notwithstanding the existence of a modest

amount of earnings since that time.

At step two, he concluded that plaintiff suffers from severe impairments that impose more than minimal limitations on his ability to perform basic work functions, including social anxiety disorder, agoraphobia and ADHD.

At step three, ALJ Ramos concluded that plaintiff's conditions do not meet or medically equal any of the listed presumptively disabling conditions set forth in the Commissioner's regulations, specifically considering listings 12.06 and 12.11.

At step four -- before proceeding to step four, I should say, the Administrative Law Judge concluded that plaintiff retains the residual functional capacity, or RFC, to perform work at all exertional levels with the following limitations, all of which relate to his mental health conditions:  The claimant retains the ability to understand and follow simple instructions and directions; to perform simple tasks with supervision and independently; to maintain attention/concentration for simple tasks; and to regularly attend to a routine and maintain a schedule.  He can have occasional interaction with supervisors and co-workers, but no interaction with the public.  He can make decisions directly related to the performance of simple work and handle usual workplace changes and interactions associated with simple work.  He should work in a position where he is not

responsible for the work of others or required to supervise others and in a position with little change in daily work processes or routine.

Applying the RFC finding, the ALJ determined that plaintiff at step four is capable of performing his past relevant work as an unloading laborer as generally performed, according to the testimony of the vocational expert, but cannot work as a cashier or bagger.  And consequently, the analysis was ended without the ALJ proceeding to step five.

The Court's function at this stage is to determine two things; whether correct legal principles were applied and whether the result is supported by substantial evidence.

Substantial evidence is defined as such relevant evidence as a reasonable person would find sufficient to support a conclusion.  As the Second Circuit has noted in *Brault versus Social Security Administration Commissioner*, 683 F.3d 443 (Second Circuit 2012) it is an extremely deferential standard, perhaps more stringent even than the clearly erroneous standard.  In *Brault* significantly the Court noted that under the standard, when an ALJ finds a fact, a fact can be rejected only if a reasonable factfinder would have to conclude otherwise.

In this case plaintiff has raised three basic issues.  He contends that the ALJ erred in evaluating the medical opinions of record with the focus being on LCSW

Case 5:20-cv-01197-DEP   Document 14   Filed 01/25/22   Page 10 of 20

*Decision - 20-cv-1197 - 1/20/2022*                              7

Moore's opinions and Dr. Jeanne Shapiro's consultative opinions.  Secondly, he challenges the RFC finding, in a related way, I should say.  And thirdly, he claims that the ALJ failed to resolve a conflict between the vocational expert's testimony and the DOT.

As a threshold matter, I note that it certainly does not matter what the Court would do faced with the record that was before the Agency, and the key is whether the Agency determination is supported by substantial evidence.

Secondly, I would note that it is plaintiff's burden to establish limitations stemming from his impairments up through step four, including at the RFC stage.

And thirdly, the weight to be given to conflicting medical opinions lies with the Administrative Law Judge under *Veino v. Barnhart*, 312 F.3d 578 (Second Circuit 2002).

So there are three medical opinions in the record.  The first is from Dr. Shapiro who examined plaintiff in July of 2018.  Her opinion appears at 428 to 432 of the Administrative Transcript.  In recording her observations of the plaintiff, she found Mr. Villie, his demeanor and his responsiveness to questions cooperative, his manner of relating, social skills, and overall presentation adequate. He looked his age.  He was appropriately dressed.  His personal hygiene and grooming was good.  The speech intelligibility was fluent, thought processes were coherent

and goal directed with no evidence of delusions, hallucinations, or disordered thinking.  His affect was congruent.  The sensorium was clear.  He was oriented times three.  His attention and concentration were intact.  His recent and remote memory skills were intact.  His intellectual functioning was estimated to be in the average range.

  The medical source statement finds no limitations in certain areas, mild limitations in certain other areas, and moderate to marked limitations in interacting adequately with supervisors, co-workers, and the public, in sustaining concentration, and performing a task at a consistent pace depending on his level of anxiety, in sustaining an ordinary routine and regular attendance at work, and in regulating emotions and controlling behavior, and maintaining well-being.

  The Administrative Law Judge discussed Dr. Moore's opinions at page 23 of the Administrative Transcript and found her opinions to be partially persuasive, noting significantly, while the record supports some limitations due to the claimant's reported social anxiety, his ability to interact with family and friends, as well as his ability to travel alone for several days at a time, and to interact with others in some contexts does not support marked limitations.

  The Administrative Law Judge ultimately found that

Dr. Shapiro was overstating the extent of plaintiff's limitations.

The second opinion of record is from a non-examining state agency consultant, Dr. Stephen Hennessy, Ph.D, from August 7, 2018.  It appears at 3A and 4A of the Administrative Transcript.  And the finding of Dr. Hennessy is as follows.  In understanding and memory, the claimant is able to understand and remember simple, some more detailed but not highly complex, instructions and work procedures.  In the area of sustained concentration and persistence, he found that the claimant possesses the attention/concentration and persistence necessary to complete simple, some more detailed but not highly complex, tasks consistently on a sustained basis.  In social interaction, he concluded that plaintiff is able to respond to supervisors and co-workers appropriately but would have difficulty dealing with the general public. And in adaptation, noted the claimant can adapt to changes in detailed, non-complex task environment and can use appropriate judgment to make effective task-related decisions in such settings.

The opinion of Dr. Hennessy generally supports the residual functional capacity finding.  It was discussed at page 23 of the Administrative Transcript and found to be more persuasive than Dr. Shapiro's opinion.

The third medical opinion is actually two opinions

given by LCSW Moore.  The first appears at 456 to 461 of the Administrative Transcript.  And in it Mr. Moore notes certain symptoms that plaintiff experiences and then notes very restrictive limitations in various areas without explanation.  For example, he finds claimant has no useful ability to function and working in coordination or in proximity to others without being unduly distracted, accepting instructions and responding appropriately to criticism from supervisors, and dealing with normal work stress.  He also finds that the plaintiff is unable to meet competitive standards in a host of categories and opines that he would be off task 25 percent or more of the time and absent more than four days per month.

The opinion is augmented by a letter dated September 9, 2019, it appears at page 463 of the Administrative Transcript, wherein Mr. Moore states that the identified symptoms from the prior report remain present.  And it goes on to state, "In fact, and due to some chaotic challenges in Matthew's family, his symptoms of anxiety and tendency to isolate socially has intensified. I feel somewhat confident that Matthew will regain lost ground once the family stabilizes."

The opinion was discussed at page 23 also of the Administrative Transcript by the Administrative Law Judge and found to be not persuasive.  The reasons given were several.

It is a check-box form failing to cite specific clinical and diagnostic findings to support the opinion.  The update does not reflect the progress that the claimant made during the intervening year as reflected in the treatment notes.  Third, the limitations are not consistent with other sources such as the psychological reviewer, that being Dr. Hennessy.  Four, is not consistent with the overall record.  And five, it is noted that the provider is not an approved medical source, whereas Dr. Hennessy and Dr. Shapiro both qualify in that category.

Because the application in this case was filed after March of 2017, the new regulations apply.  Under the new regulations, an ALJ does not defer or give specific evidentiary weight, including controlling weight or any particular medical opinion, but instead must consider that the opinions used in the relevant factors particularly supportability and consistency, and must articulate how persuasive he or she found each medical opinion and explain why.  There are other factors that may be considered, including the source's relationship with the claimant, and the treatment relationship and so forth, the specialization of the source, and other factors that tend to support or contradict the medical opinion.

In this case the new regulations do draw a distinction between an acceptable medical source and a

medical source.  Under 20 CFR Section 404.1502a and b, Dr. Shapiro and Dr. Hennessy are clearly acceptable medical sources.  The ALJ appropriately characterized Mr. Moore as a medical source but not an acceptable medical source.

There isn't any authority that I'm familiar with that prohibits an ALJ from drawing that distinction and taking it into account.  The ALJ in this case looked to supportability and consistency.  When he analyzed the opinions of Mr. Moore, he noted that it was a check-box form which case law indicates is of less value.  I agree that it cannot be the sole reason to discount an opinion that it is a check-boxed form without explanation, but it's certainly a proper consideration.

In this case the ALJ went further and analyzed plaintiff's treatment notes at 21 and 22 of the Administrative Transcript.  The opinion of Mr. Moore is not supported by Dr. Pilch's treatment notes, or the treatment notes of Dr. Gautan or Dr. Del Pilar from Compassionate Family Medicine.  There is some support for Mr. Moore's opinions from Dr. Shapiro, but those portions showing marked limitations were properly rejected and the rejection was properly explained.  Dr. Hennessy, his opinions support the ALJ's RFC finding and can be given weight of support.

Turning to the residual functioning capacity argument, which is somewhat intertwined, obviously one of the

pivotal functions of an ALJ is to establish an RFC for the plaintiff representing the plaintiff's maximum ability to perform sustained work activities in an ordinary setting on a regular and continuing basis, meaning eight hours a day for five days a week, or an equivalent schedule. *Tankisi versus Commissioner of Social Security*, 521 F.App'x 29 (Second Circuit 2013). The ALJ's RFC determination must be supported and informed by all of the relevant medical and other evidence and of course supported by substantial evidence.

Noteworthy is the fact that although I think Dr. Hennessy's opinion comes very close, there is no requirement that a residual functional capacity finding tracks anyone particular medical opinion. *Terri G. versus Commissioner of Social Security*, 2019 WL 1318074 (N.D.N.Y. 2019) and *Matta v. Astrue*, 508 F.App'x 53 (Second Circuit 2013). I also note, as was the case here, that a state agency non-examining consultant's opinion, if it is properly supported, can override the determination or the finding of another medical source. Under the Second Circuit's decision in *Camille versus Colvin*, 652 F.App'x 28 (Second Circuit 2016).

I note that the activities, plaintiff's activities of daily living were considered, and there is an indication that the restrictive findings of Dr. Shapiro and Mr. Moore, page 191, plaintiff stated he has no problem with people of

authority.  359, has trips to Elmira and more.  390 and 391, he spoke of a trip to DC, which was later referenced at 551, on June 19, 2018, where he went to visit a friend in Maryland to hang out.  He did well on trip itself.  Happy to go to a concert and be around many people.  It was also discussed at 452 of the Administrative Transcript, client discussed trip to DC to see his friend.  Has a good time and did several things socially, which were a bit of a stretch for his anxiety.  422, he testified where he stated to a provider that he took a trip to see friends.  429, he goes to the gas station.  436, he visits his grandparents.  437, he went on the family vacation trip.  So the treatment notes appear to support Dr. Hennessy and undermine the opinions of Mr. Moore in the Court's view.

It is the plaintiff's burden to show that the RFC finding of the ALJ does not adequately account for stress in the workplace; *Moxham v. Commissioner of Social Security,* 2018 WL 1175210 (N.D.N.Y. 2018).  Plaintiff did not carry this burden.  There is no evidence to rebut the ALJ's finding that plaintiff can interact with friends and family and can travel.  The accounts of those travel experiences are recounted at page 22 of the Administrative Transcript.

Simply stated, I find that the plaintiff has failed to carry his burden of showing greater limitations than those identified in the RFC.

Case 5:20-cv-01197-DEP   Document 14   Filed 01/25/22   Page 18 of 20

*Decision - 20-cv-1197 - 1/20/2022*                                      15

Turning to the step four argument, it is proper, of course, at step four to rely on a vocational expert's testimony based on a hypothetical which approximates, closely approximates the residual functional capacity determination. I note that it is plaintiff's burden at step four to establish limitations that preclude past relevant work. In this case the Administrative Law Judge relied on the testimony of the vocational expert to find that the plaintiff could perform at least some of the duties of his past relevant work and therefore is not disabled.

Plaintiff hinges this argument on SSR 00-4p, which relates to vocational expert testimony and the conflict between such testimony and the DOT. Under SSR 00-4p if there is a conflict between the DOT and the vocational expert's testimony, it is the ALJ's duty to inquire and clarify how it is resolved.

In this case the issue is the extent of interactions with supervisors and the public associated with the past relevant work. The vocational expert was asked about it and stated at page 51 and 52 of the Administrative Transcript the DOT did not address this issue. He was instead relying on his experience, education and expertise when he opined concerning the extent of that interaction. I don't find that there was an actual conflict. It is clear that when a VE testifies to a limitation that is not

addressed in the DOT, there is no conflict and no duty under SSR 00-4p to resolve it.  *Jeanette S.U. v. Saul*, 2020 WL 1494168 (N.D.N.Y. March 11, 2020); *Reisinger v. Commissioner of Social Security*, 2017 WL 2198965, footnote 14, (N.D.N.Y. May 18, 2017); and also *Abar v. Colvin*, 2016 WL 1298135 (N.D.N.Y. March 31, 2016).

So, in conclusion, I find that the Commissioner's determination in this case resulted from the application of proper legal principles and is supported by substantial evidence.  I will, therefore, award judgment on the pleadings to the defendant and order dismissal of plaintiff's complaint.

Thank you both.  I hope you stay safe and warm.

      *    *    *

C E R T I F I C A T I O N

     I, EILEEN MCDONOUGH, RPR, CRR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

*Eileen McDonough*
_____
EILEEN MCDONOUGH, RPR, CRR
Federal Official Court Reporter